Abraham **HIRSCHFELD** and Hirschfeld for Congress Citizens Committee, Plaintiffs–Appellants,

v.

George **SPANAKOS**, Seymour Sheldon, Weyman Carey, Vincent J. Cuttita, Douglas A. Kellman, Ferdinano C. Marchi, Paul Mejias, Gertrude Strohm, Vincent J. Vellella, Kathleen Wagner, individually and in their capacity as members of the Board of Elections of the City of New York and City of New York, Defendants–Appellees.

No. 2079, Docket 96–7094.

United States Court of Appeals, Second Circuit.

Argued Aug. 8, 1996.

Decided Jan. 3, 1997.

Paul A. Victor, New York City (Charles Haydon, Flora Edwards, Dublirer, Haydon, Straci & Victor. New York City, of counsel), for Appellants.

Ellen Ravitch, Office of the Corporation Counsel, City of New York (Paul A. Crotty, Corporation Counsel of the City of New York, Stephen J. McGrath, Office of the Corporation Counsel, City of New York, New York City, of counsel), for Appellees.

Before: MESKILL, CALABRESI and PARKER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal by Abraham Hirschfeld and Hirschfeld For Congress Citizens Committee (Hirschfeld) from a final judgment of the United States District Court for the Southern District of New York, Kaplan, *J.*, dismissing their remaining claim against the New York City Board of Elections (Board) for damages under 42 U.S.C. § 1983. Appellants claim they were damaged by the Board's attempts to keep Hirschfeld off the ballot for the 1992 election to the United States House of Representatives. Earlier the district court dismissed all of Hirschfeld's claims except the one relating to the Board's filing of a motion for a stay of Judge Knapp's order, *Hirschfeld v. Board of Elections*, 799 F.Supp. 394 (S.D.N.Y.1992), placing Hirschfeld on the ballot. *Hirschfeld v. Spanakos*, 871 F.Supp. 190 (S.D.N.Y.1994) (dismissing all of Hirschfeld's claims except for this one). The earlier dismissed claims are not before us on this appeal.

## BACKGROUND

In the original action, Judge Knapp held that Hirschfeld's rights under the First and Fourteenth Amendments to the United States Constitution had been violated by the Board's treatment of Hirschfeld's nomination petitions for the congressional election in November 1992, and ordered the Board to accept the petitions, thereby placing Hirschfeld on the ballot. *Hirschfeld,* 799 F.Supp. at 395. The judgment was filed on September 30, 1992. The Board's staff, in apparent acquiescence, indicated to the Hirschfeld supporters that Hirschfeld's name would be on the ballot. Then, twenty-nine days later and six days before the November 4 election, the Board filed a notice of appeal and a motion for a stay pending appeal of Judge Knapp's order.

The papers filed by Hirschfeld on October 29 in response to the motion for the stay put the Board on notice that Hirschfeld would seek attorney's fees as a sanction for the timing of the stay motion. At oral argument of the stay motion on October 30, Judge Winter, speaking for the panel, made it clear that sanctions would be imposed on the Board for bad faith in failing to seek a stay in the district court as required by Fed. R.App.P. 8(a) and for filing the stay motion in the Court of Appeals at the eleventh hour. We denied the motion for a stay from the bench and in the written opinion that followed, imposed double costs and attorney's fees of $500 on the Board as sanctions. *Hirschfeld v. Board of Elections,* 984 F.2d 35, 40–41 (2d Cir.1993). In that written opinion, we stated:

> The Board of Elections filed its motion for a stay pending appeal in complete disregard for Rule 8 of the Federal Rules of Appellate Procedure. The Board of Elections timed the eleventh hour notice of appeal and motion for a stay so that, if we had granted the stay, Hirschfeld's name would have been off the ballot and the timing of the appeal, even if expedited, would not allow enough time to restore his name to the ballot if we affirmed the district court decision. Additionally, the Board of Elections' claim of irreparable injury was meritless because any injury in

the absence of the stay would be self-inflicted. For these reasons, the motion for a stay was "entirely without color" and was clearly made for "improper reasons," thus meeting the *Browning Debenture Holders'* [*Comm. v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977)] "bad faith" test. *Id.* at 40. The Board never pursued its appeal and later withdrew it without prejudice by stipulation on January 4, 1993.

In the meantime, the election was held, and although Hirschfeld's name was on the ballot, he received only one percent of the vote.

A year and a half later, Hirschfeld brought the present suit claiming, among other things, that he was damaged by the bringing of the bad faith motion for a stay. The Board claimed immunity from liability under the Noerr Doctrine, *Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and that Hirschfeld was not damaged by the Board's action.

On December 28, 1995, the district court dealt with the only claim not dismissed earlier, the claim that Hirschfeld was damaged by the Board's stay motion. Judge Kaplan found that the Board's motion for a stay pending appeal was objectively baseless, satisfying the first *Noerr* prong. However, he then found that the second *Noerr* prong was not met because Hirschfeld failed to prove that the Board's motion was made in bad faith. The court concluded that the members of the Board, in deciding to pursue the appeal, sought to have Judge Knapp's order reversed on the merits, rather than to use the *process* of seeking a stay to derail Hirschfeld's candidacy.

Hirschfeld argued that the Board was collaterally estopped from disputing the bad faith issue by our earlier decision resulting in the imposition of sanctions. The decision to impose sanctions, Hirschfeld contended, necessarily included a determination of bad faith.

The district court held that the earlier imposition of sanctions by this Court did not require a finding that the second *Noerr* prong was met because the Board did not

receive a full and fair opportunity in which to contest the issue of bad faith due to the summary nature of sanction proceedings. The district court also held that our bad faith determination was not "necessary" to our ruling in the sense required for preclusive effect. Finally, the district court held that bad faith in the sanctions context differs materially from bad faith in the *Noerr* context. The court held that the Board did not act with the purpose of using the stay application process to keep Hirschfeld off the ballot, rather the Board sought to obtain the proper result of the motion for a stay, a stay pending appeal.

The district court also ruled that Hirschfeld failed to prove any compensable damages because he would not have won the election. Thus, the court held that, if liability had been proven, it would have awarded six cents in nominal damages to Hirschfeld.

The district court dismissed the suit. We vacate and remand for further proceedings.

## DISCUSSION

■ We review a district court's finding of fact under the clearly erroneous standard, Fed.R.Civ.P. 52(a), and conclusions of law or mixed questions of fact and law *de novo*. *See United States v. Moore*, 968 F.2d 216, 221 (2d Cir.1992).

■ The *Noerr* immunity doctrine protects plaintiffs from damage claims based on the institution of a suit in certain situations. The doctrine originated in the antitrust area, but it has been extended to provide immunity from liability for bringing other suits.

■ To defeat *Noerr* immunity, two showings are required:

First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and [a] claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this

second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor," through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."

*Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60–61, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611 (1993) (citation and footnote omitted).

■ Assuming that the *Noerr* immunity doctrine extends to non-commercial litigation, an issue we need not decide, we believe that the district court clearly erred in finding that Hirschfeld failed to prove that the Board's motion was made in bad faith. The district court reached this decision after refusing to give preclusive effect to our earlier determination on the bad faith issue.

■ The application of collateral estoppel is proper when the following four part test is satisfied:

(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995).

■ The district court reasoned that preclusive effect was not warranted because the process by which appellate courts impose sanctions is a summary process in which no testimony is taken and no cross-examination permitted. While this is a fair comment on the appropriate role of trial courts and appellate courts, it is not dispositive of the preclusion issue in this case. Admittedly, the district court would have been the preferred forum to determine whether good or bad faith led to the filing of the motion for the stay. Here, however, the Board, in seeking the stay, bypassed the district court in clear violation of Rule 8(a) of the Federal Rules of Appellate Procedure. Furthermore, the

Board had been put on notice of the sanction issue by Hirschfeld prior to oral argument of the stay motion and by Judge Winter at oral argument. When asked for an explanation for the timing of the motion, the Board offered a feeble explanation, one that differed substantially from the one later espoused before Judge Kaplan. The explanation to the panel hearing the stay motion was that the Board was studying the merits of an appeal up until the time of the filing. There was no suggestion that the Board had a better explanation for its delay and could prove it if given the opportunity. Inasmuch as the Board caused the delay that suggested bad faith, violated Rule 8(a) of Fed.R.App.P. and was on notice that bad faith was an issue for which sanctions were being sought, the district court erred in concluding that the Board did not receive a full and fair opportunity to contest the bad faith issue. *See Hirschfeld*, 984 F.2d at 40–41 (holding that the Board received fair notice and an opportunity for a hearing on the issue of bad faith).

■ The district court also erred in concluding that it was not "necessary" for us to determine that the Board acted in bad faith. The standard for sanctioning a party for bringing an appeal or motion is whether the sanctioned party acted in bad faith, vexatiously, wantonly, etc. *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986). We had to, and did, decide the bad faith issue.

The district court sought to distinguish bad faith in the sanctions context from bad faith in the *Noerr* context by concluding that the Board in seeking the stay was not trying to keep Hirschfeld off the ballot, but was merely trying to obtain the proper result of the motion for the stay, presumably to maintain the status quo until the appeal was decided. But the distinction the district court drew was illusory. The effect of what the Board sought with the stay motion was to keep Hirschfeld off the ballot. *See Hirschfeld*, 984 F.2d at 40 ("The Board of Elections timed the eleventh hour notice of appeal and motion for a stay so that, if we had granted the stay, Hirschfeld's name would have been off the ballot and the timing of the appeal, even if expedited, would not allow enough time to restore his name to the ballot if we

affirmed the district court decision."). Interestingly, the Board never did pursue the appeal. Therefore, the district court should have given preclusive effect to our determination of the bad faith issue and therefore rejected the Board's claim to *Noerr* immunity. Failure to do so requires that we reverse the judgment of the district court and remand for the district court to determine whether Hirschfeld has established that the Board violated section 1983 in seeking a stay of Judge Knapp's order. *See Professional Real Estate Investors v. Columbia Pictures Industries*, 508 U.S. 49, 61, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611 (1993) ("[E]ven a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating ... a sham must still prove a substantive ... violation. Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim."); *see also* 42 U.S.C. § 1983 (any person who, under color of law, causes another to be deprived of a Constitutional right shall be liable for damages).

■ Should Hirschfeld succeed on his claim he will have an empty victory, however, because we agree with the district court that Hirschfeld has failed to prove any damages. He did not show that the Board's action caused him to lose the election or that his campaign would have spent less money but for the Board's actions. The attorney's fees we awarded in *Hirschfeld I* eliminates this as an item of damages necessary to make Hirschfeld whole.

The judgment is reversed and the case is remanded to the district court. The parties shall bear their own costs.